United States District Court
Southern District of Texas
**ENTERED**
November 30, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM FERGUSON, Plaintiff, | § § § § | CIVIL ACTION NO. 4:19-cv-02086 |
| vs. | § § § § | JUDGE CHARLES ESKRIDGE |
| WEATHERFORD LAMB INC, Defendant. | § § § § | |

**MEMORANDUM AND ORDER
COMPELLING ARBITRATION**

The motion by Defendant Weatherford Lamb, Inc to dismiss and compel arbitration of the claims brought against it by Plaintiff William Ferguson is granted. Dkt 11.

1. Background

Weatherford Lamb is an international oil and gas company headquartered in Houston, Texas. Ferguson worked for Weatherford Lamb from 2014 to 2016 in Iraq, Bangladesh, Oman, Saudi Arabia, and Algeria. Dkt 1 at ¶¶ 10, 11.

Ferguson alleges that he was subjected to severe and pervasive sexual harassment while working as a driller for Weatherford Lamb while in Saudi Arabia. Id at ¶¶ 12–25. He further alleges that he was unlawfully terminated in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission in connection with the alleged harassment. Id at ¶¶ 48–49. Ferguson filed suit in June 2019, asserting claims under Title VII of the Civil Rights Act for sexual discrimination and harassment, hostile work environment, and unlawful retaliation. Id at ¶¶ 52–58.

Ferguson signed three employment agreements with Weatherford Lamb. Each contains an identical clause titled "Governing Law and Arbitration." That clause states:

> All disputes arising out of or in connection with this Agreement . . . that cannot be resolved by negotiation between Weatherford and you, shall be finally settled by binding arbitration, under the Rules of Arbitration of the International Chamber of Commerce (the "ICC"), by one or more arbitrators appointed in accordance with the said Rules. The arbitration shall be conducted in English language and take place in Bermuda, with any evidentiary hearing to occur at the Bermuda International Commercial Arbitration Center, if available. No arbitrator shall have the power or authority to make awards of any kind except (a) as expressly permitted by this Agreement and the substantive law Bermuda and (b) for reasonable penalties to enforce compliance with procedural orders. In no event shall the arbitrators (individually or collectively) have the authority to make any award that provides for punitive, exemplary, indirect, incidental or consequential damages.

Dkt 12-1 at 5–6, 11, 15–16.

Weatherford Lamb moved to dismiss and compel arbitration based on this arbitration clause. Dkt 11. Argument was heard on the motion at a status conference. See Minute Entry of December 4, 2019. The parties subsequently filed a stipulation agreeing that Texas law applies to issues of contract formation, and that federal law applies to the enforceability of the arbitration agreement. Dkt 27. The parties further stipulated that Ferguson signed the employment agreements containing the arbitration clause, and that the venue will be in Houston if arbitration is compelled. Ibid.

2. Legal standard

The Federal Arbitration Act provides, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 USC § 4. This permits a party to file a motion to compel arbitration when an opposing party "has failed, neglected, or refused to comply with an arbitration agreement." *American Bankers Insurance Co of Florida v Inman*, 436 F3d 490, 493 (5th Cir 2006) (citations omitted).

To determine whether to enforce an arbitration agreement, the court first determines whether there is a valid agreement to arbitrate and then considers whether the subject dispute falls within the scope of that agreement. *Edwards v Doordash Inc*, 888 F3d 738, 743 (5th Cir 2018), citing *Klein v Nabors Drilling USA LP*, 710 F3d 234, 236 (5th Cir 2013). The court must compel arbitration if both elements are satisfied unless there is a federal statute or policy to the contrary. See *Sherer v Green Tree Servicing LLC*, 548 F3d 379, 381 (5th Cir 2008).

Two important clarifications pertain to the consideration of *validity* at the first step. First, federal courts don't consider general challenges to the validity of the *entire* contract at this stage, which pertains only to a motion to compel arbitration. *Buckeye Check Cashing, Inc v Cardegna*, 546 US 440, 449 (2006). This is because an arbitration agreement is severable from the underlying contract under Section Two of the Federal Arbitration Act. *Rent-A-Center, West, Inc v Jackson*, 561 US 63, 70–71 (2010) (citation omitted). A court at this stage may address only a challenge directed at the validity of a specific agreement to arbitrate. Ibid. And if the court determines that a valid arbitration agreement exists, any remaining arguments that target the validity of the contract as a whole are questions for the arbitrator. *Edwards*, 888 F3d at 744, citing *Lefoldt ex rel Natchez Regional Medical Center Liquidation Trust v Horne, LLP*, 853 F3d 804, 814 (5th Cir 2017).

3

Second, courts must distinguish between arguments attacking the *validity* or *enforceability* of a contract—which must be heard by the arbitrator—from arguments challenging the *formation* or *existence* of a contract. *Arnold v Homeaway, Inc*, 890 F3d 546, 550 (5th Cir 2018). Questions of contract formation and existence are for the court to decide. *Edwards*, 888 F3d at 744, citing *Kubala v Supreme Production Services, Inc*, 830 F3d 199, 202 (5th Cir 2016).

Another important clarification pertains to the consideration of the *scope* of the agreement at the second step. The inquiry is more limited if the agreement contains a delegation clause. The only question then "is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F3d at 202, citing *Rent-A-Center*, 561 US at 68–69. If there is a delegation clause, the court should grant the motion to compel arbitration in almost all cases. *Kubala*, 830 F3d at 202; see also *Edwards*, 888 F3d at 743.

In deciding both the validity of an arbitration agreement and its scope, courts apply ordinary principles of state contract law. *Kubala*, 830 F3d at 202, citing *Carey v 24 Hour Fitness, USA, Inc*, 669 F3d 202, 205 (5th Cir 2012). The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. *Carter v Countrywide Credit Industries, Inc*, 362 F3d 294, 297 (5th Cir 2004) (citation omitted).

3. Analysis

Weatherford Lamb asserts that the arbitration agreement is valid and that the delegation clause compels arbitration. Ferguson makes several arguments to avoid that result. The Court needn't address those regarding whether Bermuda law applies, whether Bermuda is an adequate venue, and *forum non conveniens*. See Dkt 13 at 4–7, 14. The stipulation by the parties as to choice of law and the seat of arbitration adequately resolves those issues. See Dkt 27.

Three of his arguments remain—whether the arbitration agreement is illusory, whether there was a meeting of the minds about it, and whether it is unconscionable. See Dkt 13 at 9–14. In short, it isn't, there was, and it's not.

4

a. Challenges to contract validity and formation

*As to whether the agreement was illusory.* Ferguson doesn't dispute the existence of his several contracts with Weatherford Lamb. He instead points to a specific clause elsewhere in the contracts that states, "Weatherford can change any term or condition of your employment without your consent at any time." Dkt 13-2 at 1. Dkt 12-1 at 5–6, 11, 15–16. This, Ferguson says, makes the arbitration provision an illusory promise on Weatherford's part because it is allowed to choose "if, when, and on what terms to arbitrate, or whether to arbitrate at all." Dkt 13 at 10.

The Fifth Circuit holds that argument under Texas law that "a particular provision of the contract is illusory is properly considered a validity challenge rather than a formation challenge." *Arnold*, 890 F3d at 551 (citation omitted); see also *Firstlight Federal Credit Union v Loya*, 478 SW3d 157, 164–65 (Tex App—El Paso 2015, no pet). And here, the nature of the challenge necessarily attacks the validity of the contract as a whole, as the subject clause would render all aspects of the contract equally illusory. Such a challenge is thus for the arbitrator, not this Court. See *Edwards*, 888 F3d at 744 (citation omitted).

*As to whether there was a meeting of the minds.* A binding arbitration agreement—like any contract—requires a meeting of the minds. *David J. Sacks, PC v Haden,* 266 SW3d 447, 450 (Tex 2008). Ferguson argues that there wasn't one with Weatherford Lamb because he didn't intend to agree to arbitrate employment-related disputes. Dkt 13 at 11. The Fifth Circuit holds such a challenge to be one to the formation of the contract—meaning that it is for this Court and not the arbitrator to decide. See *Bowles v OneMain Financial Group, LLC*, 954 F3d 722, 726 (5th Cir 2020); see also *Jones v Halliburton Co*, 625 F Supp 2d 339, 345 (SD Tex 2008), affd and remd, 583 F3d 228 (5th Cir 2009).

"The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *Copeland v Alsobrook,* 3 SW3d 598, 604 (Tex App—San Antonio 1999, pet denied). "It is a widely accepted principle of contracts

5

that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." *American Heritage Life Insurance Co v Lang*, 321 F3d 533, 538 (5th Cir 2003) (citations omitted); see also *Vista Quality Markets v Lizalde*, 438 SW3d 114, 124 (Tex App—El Paso 2014, no pet). Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he reads it or believed it had different terms. *In re McKinney,* 167 SW3d 833, 835 (Tex 2005) (citation omitted).

Ferguson stipulates that he signed several contracts that included the arbitration provision. Dkt 27 at 1. He doesn't assert fraud, misrepresentation, or deceit. He instead claims that he didn't understand the arbitration agreement as extending to employment disputes because it doesn't expressly state it applies to such disputes and doesn't specify causes of action or applicable laws in that regard. Dkt 13 at 11. But the arbitration clause clearly states what it does apply to—"All disputes." Dkt 12-1 at 5–6, 11, 15–16. The very breadth of the text forecloses any argument as to whether it applies to employment disputes. And subjective belief about that breadth isn't relevant. *Copeland,* 3 SW3d at 604 (citation omitted); *In re McKinney,* 167 SW3d at 835.

*As to unconscionability.* Ferguson argues that the arbitration agreement is unconscionable because it prevents him from obtaining the "effective vindication" of his rights, namely statutory damages. Dkt 13 at 11. Texas law considers unconscionability arguments to "represent affirmative defenses against the enforcement of a presumptively formed contract." *Ridge Natural Resources, LLC v Double Eagle Royalty, LP*, 564 SW3d 105, 129 (Tex App—El Paso 2018, no pet), citing *In re FirstMerit Bank, NA*, 52 SW3d 749, 756 (Tex 2001). Determining whether an affirmative defense such as unconscionability constitutes a valid ground for nonenforcement of the contract is typically a matter for the arbitrator, not the trial court. *Maravilla v Gruma Corp*, 783 F Appx 392, 395–96 (5th Cir 2019); see also *Ridge Natural Resources,* 564 SW3d at 130. And when a plaintiff's unconscionability argument is based on "the arbitration agreement as a whole" instead of "the delegation clause in particular," the question of an arbitration agreement's validity is

6

for the arbitrator to decide. *Arnold*, 890 F3d at 554, citing *Rent-A-Center*, 561 US at 71–72.

The argument by Ferguson isn't specific to the delegation clause. As such, it is for the arbitrator to decide.

### b. Scope of delegation clause

Weatherford Lamb argues that that the arbitration agreement contains a valid and enforceable delegation clause. "If the parties did enter a contract to arbitrate, and that contract contains a clause delegating the decision of whether a given claim is within the scope of the arbitration clause to the arbitrator rather than the court, the court's work is over, and the arbitrator decides both whether the claim is arbitrable and, if so, what the merits result should be." *National Oilwell Varco, LP v Sadagopan*, 2018 WL 276364, *2 (SD Tex).

The Fifth Circuit teaches that delegation clauses can be explicit or implicit. *Petrofac, Inc v DynMcDermott Petroleum Operations Co*, 687 F3d 671, 675 (5th Cir 2012). One that is *explicit* states that the arbitrator has the power to determine his or her own jurisdiction or to determine whether specific claims are arbitrable. One that is *implicit* incorporates a body of rules or law that provides in turn that the arbitrator is to have the power to determine his or her own jurisdiction or to rule on arbitrability in the first instance. Incorporation of such rules presents "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Arnold,* 890 F3d at 551–52. For instance, the Fifth Circuit held in *Petrofac* that incorporation of AAA rules into an arbitration agreement made threshold questions of arbitrability ones for the arbitrator to decide because one of those rules provided that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." 687 F3d at 675, quoting Rule 7(a) of the AAA Rules.

There isn't an express delegation clause in the arbitration agreement. But it does contain an implicit one, as it incorporates the Rules of Arbitration of the International Chamber of Commerce. Article 6(3) of those rules provides that disputes regarding "the existence, validity or scope of the arbitration agreement" or concerning jurisdiction shall be decided in

7

arbitration by the arbitral tribunal. This is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.

4. Conclusion

The Fifth Circuit holds that dismissal of the case is appropriate when all issues raised in the district court must be submitted to arbitration. *Alford v Dean Witter Reynolds, Inc*, 975 F2d 1161, 1164 (5th Cir 1992) (citations omitted). So it is here.

The motion by Defendant Weatherford Lamb Inc to dismiss this action and compel arbitration is GRANTED. Dkt 11. The claims against it are DISMISSED WITHOUT PREJUDICE.

The Court DIRECTS that the claims of Plaintiff William Ferguson must be arbitrated in Houston, Texas in accordance with the arbitration agreement as supplemented by the stipulation of the parties. Dkt 27.

SO ORDERED.

Signed on November 30, 2020, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge